UNITED STATES STEEL CORPORATION v. MASON.

[No. 20,629. Filed July 7, 1967. Rehearing denied September 11, 1967. Transfer denied January 18, 1968.]

*Hackbert, Rooks, Pitts, Fullagar and Poust,* of Chicago, Illinois, *White, Raub, Reis and Wick,* of Indianapolis, and *Douglas F. Stevenson,* of Chicago, and *Carl T. Reis,* of Indianapolis, both of counsel, all for appellant.

*Tomsich, Tetek and Halkias* and *George Halkias,* of counsel, both of Gary, for appellee.

PRIME, J.—Appeal by the Defendant U. S. Steel Corporation from a decision of the Industrial Board of Indiana which awarded Norman D. Mason twenty-six weeks of temporary total and 67½ weeks of 30% permanent partial disability for injuries to his left leg at the rate of $42.00 per week.

The Plaintiff filed a claim in proper order which was heard by a hearing member who found in favor of the Plaintiff. The Defendant filed a Petition for Review by the Full Board which affirmed the award of the hearing member.

The award of the Board was as follows:
"It is further found that on the date of said accidental injury the plaintiff arrived at his place of employment on the defendant's premises in an intoxicated condition, that the defendant had knowledge of his said intoxicated condition, but permitted him to perform services for the defendant as a crane operator; that in the performance of his duties as a crane operator the defendant acquiesced in all of said plaintiff's actions while performing work for the defendant herein; that the plaintiff did not wilfully fail

or refuse to obey a printed rule of the defendant-employer." (R. 37, LL. 11-22).

Defendant-Employer filed a special answer that the accident was due (1) to the wilful misconduct of the employee in filing or refusing to obey a reasonable written or printed rule of the employer, and (2) to the intoxication of the employee.

It was stipulated that Plaintiff was employed at an average weekly wage of $70.00 and that he suffered a broken leg in the accident. The medical report and hospital report was received by agreement.

It was also stipulated that Plaintiff returned to work on June 24, 1964. He was discharged by defendant for intoxication involved in the case. A grievance under the labor contract was pending at the time of the hearing in which Plaintiff denied intoxication.

The Defendant, U. S. Steel, appealed, assigning as error (1) the award of the Industrial Board is contrary to law and, (2) is not sustained by the evidence.

The section of the Workman's Compensation Act with which we are concerned here reads as follows:

"Section 8, no compensation shall be allowed for an injury or death due to the employee's intentionally self-inflicted injury, his intoxication, his commission of a felony or misdemeanor, his wilful failure or refusal to obey a reasonable written or printed rule of the employer which has been posted in a conspicuous position in the place of work, or his wilful failure or refusal to perform any statutory duty. The burden of proof shall be on the defendant." *Burns'* Vol. 8, Part I., Sec. 40-1208.

The record discloses the following facts: Mason reported for work at Midnight, September 6, 1963. He worked on a certain mill crane for about two hours. He then climbed down from the cab. Two foremen talked to him about his condition and they assigned him to another crane outside the building. While operting this crane about 6:00 A.M. he was

knocked off the crane and fell into a pit containing water. He was pulled out and taken to the hospital.

The issues presented in this appeal are: (1) Can the bar of the statute which forbids compensation for an accident due to intoxication be lifted if the employer allows or acquiesces in the alleged condition? (2) Did the Defendant acquiesce in this case?

While we are not prepared to define the word intoxication in this case it does appear that the employee was drinking on the job at least and the finding of the Board was that he was intoxicated. The Plaintiff also admitted as much.

What happened after he reported for work in this condition? He was put to work on the crane. After about two hours he was called down by his foreman and put to work on another crane doing another type of work. Did this constitute acquiescence on the part of the Defendant-Employer?

We believe that the following testimony is important to a determination of the question.

*Testimony of Andy Vasas.*

Q. Your name please.

A. Andy Vasas. I am on the Grievance Committee at U. S. Steel . . .

Q. What other conversations have you had with supervision of Mr. Mason since that time?

A. Well, I had the privilege of talking to Mr. Sam Mills.

Q. And what is his employment?

A. Mills is a foreman of the billet mill.

Q. What conversation did you have with Sam Mills regarding the accident of Norman Mason . . . what was the conversation.

A. I said, "Why was Mason taken off the crane?" He said he was taken off the crane because he was running it erratically.

Q. This was the conversation you had with Sam Mills?

A. Yes, I said, "You mean to tell me the man was running a crane and now you are telling me he could not?" He said, "Andy, I think he was too darn

drunk to run a crane." I said, "Why didn't you send him home, then?" I gathered from Sam's discussion it wasn't his place to send him home, the man to send him home was Tom Takis . . .

Q. Getting back to the conversation with Tom Takis, what did he say regarding Norman Mason's injury and what did you say to him?

A. We talked about Norman Mason's injury and like I said before, he thought Norman Mason had too much to drink and I wanted to know why the man wasn't sent home.

Q. What did he answer?

A. The answer doesn't come out the way I would like to say it.

Q. Would you give it the best way you could for the Court?

A. I say this—the reason he was kept working, they didn't want to see him get fired.

We set this testimony out to throw some light on the question of acquiescence on the part of the defendant.

It seems clear that there was a conference among the foremen on the job and that the Plaintiff was taken off one crane and assigned to another. He was not ordered off the job but was allowed to continue working.

In view of all the circumstances we come to the conclusion that the employer here allowed the violation to exist and made no move to stop the violation or discipline the violator.

> "If the employer allows violations of the rule or acquiesces therein, he cannot later set up such a violation as a defense to the payment of compensation." Small, *Workmans Compensation Law of Indiana* (1950) Sec. 11, P. 320.

We believe that the employer has an obligation to check all infractions of its rules particularly as they relate to drinking and intoxication. At least, where an employee is drinking on the job and the supervisory personnel are aware of it, it would

be only common sense to get such a man off the job and out of danger to himself and others. We do not say that with thousands of workers, the employer should make a check of each worker to ascertain their sobriety, but here is a case where the condition was plain for all to see and nothing was done by the employer to correct the condition.

"It would be manifestly unjust to hold that an employer might ignore a rule adopted as this one was, and then invoke it in order to defeat an award of compensation to his servant . . ." *Kuhner Packing Co.* v. *Hutchinson* 97 Ind. App. 228, 186 N. E. 2d 262.

By no means do we excuse drinking or intoxication on the part of employees on any job, nor do we mean to contravene the statute that bars recovery by employees who are intoxi- .cated. What we are saying is that when a violation is as evi- dent and plain as in this case, the employer must take some step to eliminate any semblance of approval of acquiescence.

The award of the Industrial Board is affirmed.

Judgment affirmed.

Cooper, J., concurs.

Concurring opinion by Faulconer, J., with whom Carson, P.J., joins.


CONCURRING OPINION

FAULCONER, J.—That the exceptions provided in Acts 1929, ch. 172, § 8, p. 536, § 40-1208, Burns' 1965 Repl., can be waived by the acquiescence of the employer is without ques- tion in my opinion.

We are prevented from adopting appellant's contention of reversible error for two reasons, 1) the nature of the evidence produced on the issue of acquiescence, and 2) that if there is some evidence of substantial probative value to sustain the award we must affirm.

Testifying for appellee was Dr. Robert M. May who testified that a blood alcohol test of claimant-appellee after 7:20 A.M. showed a level of 258 mg. per cent which, under the classification of the degree of alcoholic intoxication, placed appellee "in a quite confused state."

Claimant-appellee admitted, on cross-examination, that he was "drunk" when he came on duty; that he "drank some more while on duty that night"; that appellee was "pretty drunk" that night, so drunk that he (appellee) didn't believe he "could have used anymore"; and that appellee had a bottle with him in the cab of the scale pit crane. Also, appellee testified, on direct examination, that the pit foreman, John Orwiskwicki, called appellee's boss, Tom Takis, and they met appellee when he "reached the floor level," and the roller who was standing there said "I was drunk and had no business running a crane."

The other evidence produced concerning knowledge of appellee's condition by his superior was given by Andy Vasas, Chairman of the Grievance Committee of the billet mills, who stated that he talked to Tom Takis several weeks after he talked to Sam Mills who told him that "Mason had had too much to drink," and that Sam Mills said, "Andy, I think he [appellee] was too darn drunk to run a crane."

All of this evidence was unrefuted. It is true that appellant produced a grievance complaint signed by claimant-appellee stating he had not been drinking, however, this merely presented conflicting evidence.

Therefore, from the evidence produced at the hearing, we cannot state as a matter of law that there is no evidence of probative value to sustain the award, nor can we say such award is contrary to law.

Carson, P.J., concurs.

NOTE.—Reported in 227 N. E. 2d 694.